1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

| | |
|---|---|
| OLYMPIC PLAZA OWNERS ASSOCIATION, a Washington Non-Profit Corporation, <br><br> Plaintiff, <br> v. <br><br> AMGUARD INSURANCE COMPANY, a Nebraska Corporation; HDI GLOBAL INSURANCE COMPANY, an Illinois Corporation; and DOE INSURANCE COMPANIES 1–10, <br><br> Defendants. | NO. <br><br> COMPLAINT FOR DECLARATORY RELIEF, BAD FAITH, CONSUMER PROTECTION ACT VIOLATIONS, AND DAMAGES <br><br> JURY DEMAND |

9
10
11
12
13
14
15

16    Plaintiff Olympic Plaza Owners Association (the "Association") alleges as follows:

17

## I.   INTRODUCTION

18    1.1    This is an action for declaratory judgment, bad faith violations, Consumer Protection Act

19    ("CPA") violations, and money damages seeking:

20          (A)     A declaration of the rights, duties and liabilities of the parties with respect to certain

21    controverted issues under insurance policies issued to the Association, respectively, by

22    AmGUARD Insurance Company and HDI Global Insurance Company (collectively

23    "Defendants"). The Association is seeking a ruling that the Defendants' policies provide coverage

24    for damage at the Olympic Plaza Condominiums and that the above listed insurers are liable for

25    money damages for the cost of investigating and repairing the damage at the Olympic Plaza

26    Condominiums.

          (B)     Damages for bad faith and violations of the CPA.

(C)     Attorneys' fees and costs (including expert witness fees).

(D)     Any other relief the Court deems just and equitable.

## II.     PARTIES AND INSURANCE CONTRACTS

2.1     <u>The Association</u>. The Association is a nonprofit corporation incorporated under the laws of the state of Washington with its principal place of business located in Seattle, Washington. The Association has the duty to maintain the common elements and any limited common elements of the Olympic Plaza Condominiums for the common enjoyment of the unit owners. The Olympic Plaza Condominiums consists of one (1) building containing a total of eighteen (18) residential units located in Seattle, King County, Washington.

2.2     <u>AmGUARD</u>. AmGUARD Insurance Company ("AmGUARD") is a Nebraska domiciled insurer with its principal place of business in Wilkes-Barre, Pennsylvania. AmGUARD sold and issued property insurance policies to the Association and/or covering the Olympic Plaza Condominiums including, but not limited to, Policy No. OLBP078707 (in effect from 09/30/2019 – 09/30/2020), OLBP145631 (in effect from 09/30/2020 – 09/30/2021), and OLBP230805 (in effect from 09/30/2021 – 09/30/2022). The Association is seeking coverage under all AmGUARD policies issued to the Association or covering the Olympic Plaza Condominiums at any time.

2.3     <u>HDI.</u> HDI Global Insurance Company, formerly known as HDI-Gerling America Insurance Company, ("HDI") is an Illinois domiciled insurer with its principal place of business in Chicago, Illinois. On information and belief, HDI-Gerling America Insurance Company sold and issued property insurance Policy Nos. GK07X000761-00 (in effect from 09/30/2014 – 09/30/2015) and GK07X000761-01 (in effect from 09/30/2015 – 09/30/2016) to the Association. On information and belief, HDI Global Insurance Company is the successor in interest to HDI-Gerling America Insurance Company. HDI Global Insurance Company assumed all rights, obligations, and liabilities under the insurance contracts issued by HDI-Gerling America Insurance Company including, but not limited to, Policy Nos. GK07X000761-00 and GK07X000761-01 issued to the Association or covering the Olympic Plaza Condominiums. HDI Global Insurance Company also sold and issued property insurance policies to the Association and/or covering the Olympic Plaza

Condominiums including, but not limited to, GK07X000761-02 (in effect from 09/30/2016 – 09/30/2017) and GK07X000761-03 (in effect from 09/30/2017 – 09/30/2018). The Association is seeking coverage under all HDI-Gerling America Insurance Company and/or HDI Global Insurance Company policies issued to the Association or covering the Olympic Plaza Condominiums at any time.

2.4    Doe Insurance Companies 1–10. Doe Insurance Companies 1–10 are currently unidentified entities who, on information and belief, sold insurance policies to the Association that identify the Olympic Plaza Condominiums as covered property.

2.5    Olympic Plaza Insurers. AmGUARD, HDI, and Doe Insurance Companies 1–10 shall be collectively referred to as the "Olympic Plaza Insurers."

2.6    Olympic Plaza Policies. The policies issued to the Association by the Olympic Plaza Insurers shall be collectively referred to as the "Olympic Plaza Policies."

## III.    JURISDICTION AND VENUE

3.1    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

3.2    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) as the Olympic Plaza Insurers marketed and sold insurance to the Association in King County; a substantial part of the events giving rise to the claim occurred in King County; and the insured condominium buildings are located in King County.

## IV.    FACTS

4.1    Incorporation by Reference. The Association re-alleges the allegations of Paragraphs 1.1 through 3.2, above, as if fully set forth herein.

4.2    Tender to Olympic Plaza Insurers.  In February 2022, the Association tendered a claim for insurance coverage to HDI for recently discovered hidden damage to underlying building components at the Olympic Plaza Condominiums. In April 2022, the Association tendered a claim for insurance coverage to AmGUARD for the recently discovered hidden damage to underlying

STEIN, SUDWEEKS & STEIN, PLLC
16400 SOUTHCENTER PKWY, SUITE 410
TUKWILA, WA 98188
PHONE 206.388.0660 FAX 206.286.2660

building components at the Olympic Plaza Condominiums. The Association requested that the Olympic Plaza Insurers, including AmGUARD and HDI, investigate for any additional hidden damage at the Olympic Plaza Condominiums.

4.3     Joint Intrusive Investigation. The Association retained a building envelope consultant, Evolution Architecture ("Evolution"), to investigate for hidden damage at the Olympic Plaza Condominiums. Evolution, in conjunction with the Association's historic property insurers, including AmGUARD and HDI, subsequently performed an intrusive investigation at the Olympic Plaza Condominiums. The joint intrusive investigation revealed damage to the underlying building components including, but not limited to, weather-resistive barrier, deck underlayment, and exterior sheathing at the Olympic Plaza Condominiums. The Association's experts have opined that the cost to repair the hidden damage at the Olympic Plaza Condominiums is well over the jurisdictional limit of $75,000.

## V.     FIRST CLAIM AGAINST THE OLYMPIC PLAZA INSURERS FOR DECLARATORY RELIEF THAT THE OYMPIC PLAZA POLICIES PROVIDE COVERAGE

5.1     Incorporation by Reference. The Association re-alleges and incorporates by reference the allegations of Paragraphs 1.1 through 4.2, above, as if fully set forth herein.

5.2     Declaratory Relief. The Association seeks declaratory relief from the Court in the form of determinations regarding the following disputed issues:

(A)     The Olympic Plaza Policies cover the damage to weather-resistive barrier, deck underlayment, and exterior sheathing at the Olympic Plaza Condominiums.

(B)     No exclusions, conditions, or limitations bar coverage under the Olympic Plaza Policies.

(C)     On information on belief, the loss or damage to the Olympic Plaza Condominiums was incremental and progressive. On information on belief, new damage commenced during each year of the Olympic Plaza Policies.

(D)     As a result, the Olympic Plaza Policies cover the cost of investigating and repairing the weather-resistive barrier, deck underlayment, and exterior sheathing at the Olympic Plaza Condominiums.

## VI.     SECOND CLAIM: AGAINST AMGUARD FOR INSURANCE BAD FAITH

6.1     Incorporation by Reference. The Association re-alleges and incorporates by reference the allegations of Paragraphs 1.1 through 5.2, above, as if fully set forth herein.

6.2     The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. RCW 48.01.030. An insurer has a duty to act in good faith. This duty requires an insurer to deal fairly with its insured. The insurer must give equal consideration to its insured's interests and its own interests and must not engage in any action that demonstrates a greater concern for its own financial interests than its insured's financial risk. An insurer who does not deal fairly with its insured, or who does not give equal consideration to its insured's interests, fails to act in good faith.

6.3     The duty of good faith requires an insurer to conduct a reasonable investigation before refusing to pay a claim submitted by its insured. An insurer must also have a reasonable justification before refusing to pay a claim. An insurer who refuses to pay a claim, without conducting a reasonable investigation or without having a reasonable justification, fails to act in good faith.

6.4     AmGUARD had a duty to investigate, evaluate, and decide the Association's claim in good faith. AmGUARD breached its duty by failing to promptly investigate the Association's claim and refusing to issue a coverage determination regarding the Association's claim. Further, it has been over a year since the Association has submitted its claim, and AmGUARD has failed to disclose the coverage provided by its policies, including that the policies cover damage from weather and wind-driven rain and cover loss or damage from the combination of wind-driven rain and inadequate construction. AmGUARD's conduct violated Washington claims handling standards, which require insurers to adopt and implement reasonable standards for the prompt investigation of

claims. A violation, if any, of one or more Washington claims handling standards is a breach of the duty of good faith, an unfair method of competition, an unfair or deceptive act or practice in the business of insurance, and a breach of the insurance contract.

6.5     AmGUARD's actions and omissions were unreasonable, unfounded, and frivolous under the circumstances and constitute a breach of AmGUARD's duty of good faith. As a direct and proximate result of these breaches, the Association has been damaged in an amount to be proven at trial.

## VII.   THIRD CLAIM: AGAINST HDI FOR INSURANCE BAD FAITH

7.1     <u>Incorporation by Reference</u>. The Association re-alleges and incorporates by reference the allegations of Paragraphs 1.1 through 6.5, above, as if fully set forth herein.

7.2     The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. RCW 48.01.030. An insurer has a duty to act in good faith. This duty requires an insurer to deal fairly with its insured. The insurer must give equal consideration to its insured's interests and its own interests and must not engage in any action that demonstrates a greater concern for its own financial interests than its insured's financial risk. An insurer who does not deal fairly with its insured, or who does not give equal consideration to its insured's interests, fails to act in good faith.

7.3     The duty of good faith requires an insurer to conduct a reasonable investigation before refusing to pay a claim submitted by its insured. An insurer must also have a reasonable justification before refusing to pay a claim. An insurer who refuses to pay a claim, without conducting a reasonable investigation or without having a reasonable justification, fails to act in good faith.

7.4     HDI had a duty to investigate, evaluate, and decide the Association's claim in good faith. HDI breached its duty by failing to promptly investigate the Association's claim and refusing to issue a coverage determination regarding the Association's claim. Further, it has been over a year since the Association has submitted its claim, and HDI has failed to disclose the coverage provided

by its policies including that the policies cover damage from weather and wind-driven rain and cover loss or damage from the combination of wind-driven rain and inadequate construction. HDI's conduct violated Washington claims handling standards, which require insurers to adopt and implement reasonable standards for the prompt investigation of claims. A violation, if any, of one or more Washington claims handling standards is a breach of the duty of good faith, an unfair method of competition, an unfair or deceptive act or practice in the business of insurance, and a breach of the insurance contract.

7.5     HDI's actions and omissions were unreasonable, unfounded, and frivolous under the circumstances and constitute a breach of HDI's duty of good faith. As a direct and proximate result of these breaches, the Association has been damaged in an amount to be proven at trial.

## VIII.    FOURTH CLAIM: AGAINST AMGUARD AND HDI FOR VIOLATIONS OF THE CONSUMER PROTECTION ACT

8.1     The Association re-alleges and incorporates by reference the allegations of Paragraphs 1.1 through 7.5, above, as if fully set forth herein.

8.2     Violations of Washington Administrative Code ("WAC") claims handling standards are per se CPA violations. On information and belief, AmGUARD and HDI's conduct was deceptive, impacted the public, and had the capacity to deceive. The Association is a consumer. As a direct and proximate result of AmGUARD and HDI's violations, the Association has been damaged in an amount to be proven at trial. Under the CPA, the Association is entitled to damages, CPA penalties of up to $25,000 per violation, and attorneys' fees.

## IX.    PRAYER FOR RELIEF

WHEREFORE, the Association prays for judgment as follows:

9.1     <u>Declaratory Judgment Regarding Coverage</u>. A declaratory judgment that the Olympic Plaza Policies provide coverage as described herein and that the Olympic Plaza Insurers are obligated to pay money damages to repair the hidden damage at the Olympic Plaza Condominiums.

9.2     <u>Money Damages</u>. For money damages in an amount to be proven at trial.

9.3 <u>Attorneys' Fees and Costs of Suit</u>. For reasonable attorneys' fees and costs (including expert fees). *See Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991), and RCW 48.30.015.

9.4 <u>CPA Penalties</u>. For CPA penalties against AmGUARD and HDI of up to $25,000 per violation.

9.5 <u>Other Relief</u>. For such other and further relief as the Court deems just and equitable.

## X.   DEMAND FOR JURY TRIAL

10.1 Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Association demands trial by jury in this action of all issues so triable.

DATED this 12th day of December, 2023.

**STEIN, SUDWEEKS & STEIN, PLLC**

*/s/ Jerry H. Stein*
*/s/ Justin D. Sudweeks*
*/s/ Daniel J. Stein*
*/s/ Jessica R. Burns*
Jerry H. Stein, WSBA 27721
Justin D. Sudweeks, WSBA 28755
Daniel J. Stein, WSBA 48739
Jessica R. Burns, WSBA 49852
16400 Southcenter Pkwy, Suite 410
Tukwila, WA 98188
Email: jstein@condodefects.com
        justin@condodefects.com
        dstein@condodefects.com
        jessica@condodefects.com
Telephone: (206) 388-0660
Facsimile: (206) 286-2660
***Attorneys for Plaintiff***